**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ANTHONY CHISLEY,                                    *

    Plaintiff                                       *

        v                                          *          Civil Action No. DKC-13-2166

MALLOW, et al.,                                     *

    Defendants                                      *
                                 ***

**MEMORANDUM OPINION**

Self-represented Plaintiff Anthony Chisley filed the above-captioned Complaint pursuant to 42 U.S.C. § 1983. Defendants Sergeant Sawyer, Correctional Officer Broadwater, Correctional Officer Mallow, Correctional Officer Metz, and Correctional Officer Yutzy have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. ECF Nos. 20 & 28. Plaintiff has responded. ECF Nos. 29 & 30. After review of the papers and applicable law, the court determines that a hearing is unwarranted. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the Motion to Dismiss, construed as a Motion for Summary Judgment, will be GRANTED.

**Background**

Plaintiff, an inmate currently confined at the North Branch Correctional Institution (NBCI), alleges that on July 18, 2013, at approximately 1:00 p.m., Defendants Mallow, Metz, and Broadwater came to his cell with a tether and handcuffs and ordered him to cuff from the back. Plaintiff states the officers opened his cell door and escorted him to an isolation cell. He states that after he entered the cell, the door was closed and the officers pulled his arms through the door slot backwards, twisting and punching his arms as the cuffs were removed. He states that Mallow sprayed mace into the door and then slammed the door slot, leaving Plaintiff in the

cell with the window bolted shut and no air entering the cell.   Plaintiff states that after approximately five minutes he was ordered to cuff again with the tether hooked to the cuffs.   He states that his cell door was opened and Mallow, Metz, Yutzy, Broadwater and Sawyers kicked and punched him in the head, face, body, and penis as he was forced through the C&D foyer and into the C&D holding cell.   He states that an unidentified nurse refused to treat him after he repeatedly told her he had been assaulted and maced and requested medical attention.   Plaintiff states that he was forced back through the C&D foyer and onto D tier into the medical unit where an unidentified officer entered and punched and kicked him repeatedly.

Plaintiff states that after showering the mace from his face, body, and private area he was placed in an isolation cell without any clothing.   He claims he was denied a mattress, sheets, hygiene items, toilet paper and water and the sink and toilet in the cell were shut off.   He states he was denied regular tray meals but instead was provided bag meals.   He also states that he was denied his medication which he takes daily for hypertension, high cholesterol, chronic acid reflux, and migraines.   He also states that he suffers from epilepsy and mental illness for which he receives medication twice daily.   Plaintiff states that he spent 25 hours in the isolation cell before he was taken back to his cell on July 19, 2013.   *Id.*

When he was returned to his regular cell, Plaintiff claims that Defendants Broadwater and Metz went into his cell and removed his property.   Plaintiff states he received a property slip but because most of his appliances and other items were not listed, he refused to sign off on the property list.   Plaintiff states that the officers threw his property around his cell.   *Id.*

Plaintiff states he did not exhaust his administrative remedies because correctional staff threatened him and told him that they would not process any of his paperwork.   *Id.*

Attached to his complaint are virtually identical affidavits from inmates Derrick Dirton, Bobby Turner,[1] and Warren Chase, who state that on July 18, 2013, they witnessed Defendants Metz, Yutzy, Broadwater, Mallow and Sawyer handcuff Plaintiff with a tether, then take him to the isolation cell (2-D-3) where they twisted and punched his arms while removing handcuffs. ECF No, 1,  Attachment, p. 7-9.  Dirton and Chase state that Mallow sprayed mace into the cell and then the officers brought Plaintiff out of the cell and punched and kicked him in his head, face and body.  *Id.*, pp. 7, 9.  Dirton avers that Plaintiff was left in the isolation cell until 7:30 p.m on July 19, 2013.  *Id.*, p. 7.  He further avers that Broadwater and Metz went into Plaintiff's cell with a yellow cart and removed all of Plaintiff's property and appliances.  Dirton states that he heard Plaintiff complain about missing property.  ECF No, 1, Attachment, p. 7.

Plaintiff alleges that Defendants are involved in a campaign to harass and assault him and to destroy his ARPs as well as his mail.  ECF Nos. 3, 7, & 10.  Plaintiff states that on August 16, 2013, Mallow, Broadwater, Metz and Yutzy went into Plaintiff's cell and read his daily legal log. He also claims that they moved him to an unsanitary medical cell in order to harass him for filing the instant case.  ECF No. 7.

Defendants deny each of Plaintiff's allegations.  Each avers that he did not assault, harass, retaliate or threaten Plaintiff, and did not witness any other officer do so.  *Id.*, Ex. 2, 3, 4, 5, and 6.  Defendants further aver that they did not interfere with Plaintiff's medical care on July 18, 2013.  *Id.* Additionally, each Defendant avers that he did not discard, destroy or steal any of Plaintiff's ARPs, mail, or property.  *Id.*

In support of their dispositive motion, Defendants offer the following information. Plaintiff is a Maximum Security Administrative Segregation Special Needs Unit Assessment

---

[1] Turner avers that he did not write or sign the affidavit presented by Plaintiff.  ECF No. 20, Ex. 12.

Inmate. *Id.*, Ex. 3, p. 3.  On July 18, 2013, at approximately 1:05 p.m., Broadwater, Metz and Mallow were transferring Plaintiff from housing unit 2-D-17 to cell 2-D-2, due to Plaintiff's disruptive behavior.  *Id.*, Ex., 3, 4, & 5.  Plaintiff was placed in hand restraints and a tether and was escorted from the old cell to the new cell without incident.  Plaintiff was placed in the new cell, the door was secured, and the restraints removed.  As officers attempted to secure the security slot in the door, Plaintiff pushed the slot open and attempted to grab Mallow's keys. While Officers continued their efforts to close the slot, Plaintiff successfully pushed the security slot open and grabbed Metz's keys which were attached to Metz.  Metz stated to the other officers that Plaintiff had his keys and Mallow applied pepper spray into the security slot. Plaintiff released his grip.  *Id.*, Ex. 3, 4, 5, & 7, p. 9-18, 25-43, Ex. 8, p. 3-134, 71-90.  Metz immediately left the area because he had been exposed to the pepper spray.[2] *Id.*, Ex. 5.

Sawyers arrived at the cell after the pepper spray had been used.  *Id.*, Ex. 8, p. 11. Sawyers and Mallow escorted Plaintiff to the C/D holding cell.  *Id.*, Ex. 3, p. 4.  Plaintiff was evaluated by medical staff, treated for pepper spray exposure, cleared to return to his assigned housing, and taken to the shower for decontamination.  *Id.*, Ex. 7, p. 25.  Photographs were taken of Plaintiff.  *Id.*, Ex. 7, p. 38-39.

At approximately 1:40 p.m., while Plaintiff was showering in the Unit 2-D Wing, Lieutenant Llewellyn attempted to obtain a statement from Plaintiff regarding the incident.  *Id.*, Ex. 10.  Plaintiff declined to give a verbal or written statement.  Llewellyn did not observe any

---

[2] As a result of the altercation, Plaintiff was charged and found guilty of inmate rule violations:  Rule 101-assault on staff, Rule 116-misuse of security equipment, and Rule 312-interference with staff.  *Id.*, Ex. 5, p.  5; Ex. 7, p. 51-63.

injuries on Plaintiff.  Llewellyn wrote a statement on that date.[3]  He avers that neither he nor any other officer in his presence assaulted or threatened Plaintiff.  *Id.*, Ex. 10; Ex. 7, p. 35; Ex.  8, p. 82.

Defendants indicate that Cell 2 does not have a mattress because it is a de-escalation cell. *Id.*, Ex. 7, p. 14.  The cell Plaintiff was moved into in August was cleaned with bleach prior to Plaintiff's placement in the cell.  *Id.*

On July 19, 2013, Broadwater and Metz inventoried Plaintiff's property.  *Id.* Ex. 3 & 5. They aver that they did not steal or destroy any of Plaintiff's property, nor did any other correctional staff do so in their presence.  Broadwater and Metz recall Plaintiff having a box for a Play Station but there was no Play Station in the box.  Broadwater states that he reviewed the property sheet and it was accurate.  *Id.*  Plaintiff's property records show that he received a Play Station 2 on March 26, 2011.  *Id.*, Ex. 7, p. 107.  Records reflect that on January 12, 2013, Plaintiff claimed his Play Station and controllers were stolen.  *Id.*, Ex. 11, p. 40.

As a result of Plaintiff's complaints, he was interviewed by Sergeant Peterson of the Internal Investigation Unit on September 17, 2013.  Plaintiff stated that was escorted to Cell 2-D-2 where Defendants kicked and punched him.  *Id.*, Ex. 8, p. 6-8.  During his interview with Peterson, Plaintiff did not claim, as he does here, that he had been assaulted in the shower. During his interview Plaintiff told Peterson that Nurse Bruno treated him for injuries after he was taken to 2-D-2.  Plaintiff requested that he be transferred to the Patuxent Institution.  Peterson reviewed the security camera recording and noted that it did not show Plaintiff was assaulted by staff.  *Id.*, Ex. 8, p. 9, 10, 14; Ex. 10.

---

[3] Llewellyn typed the wrong date on his report-7/17/2013.  He handwrote the correct date, 7/18/13, next to his signature. *Id.*, Ex. 7, p. 35, Ex. 8, p. 82.

A second Internal Investigation[4] was undertaken as a result of Plaintiff's claim of excessive force.   Detective Sergeant Kandace Mills was assigned to investigate Plaintiff's allegation that he was assaulted on July 18, 2013.   *Id.*, Ex. 7.   Mills reviewed the video surveillance.  She noted that the video started at approximately 1:05 p.m. and three officers were observed at the cell where there appeared to be a struggle while the cell door was closed.   She noted that the inmate appeared to be in the cell.   She indicated that Metz was observed leaving the area and Plaintiff had one of his arms out of the slot.   At approximately 1:08 the inmate was taken out of the cell and escorted off the tier.   At no time did Mills observe the officers assault Plaintiff.   The video did not show Plaintiff falling or the officers assaulting him as he alleged.  *Id.*, Ex. 7, p. 10.   Mills interviewed Plaintiff on November 25, 2013.   Plaintiff advised Mills that the video would show the officers beating him and kicking him when they brought him out of cell 2-D-2 and that he fell to the floor.   *Id.*, Ex. 7, pp. 10-13.

The court has reviewed the surveillance video.   *Id.*, Ex. 10.   While the officers are not identified in the video, Mills' reporting of events at the cell door comports with the images on the video.   The video shows a struggle at the cell door and officers removing an inmate from the cell and escorting him off the tier.   The inmate does not fall and there is no assault.   *Id.*  There is no evidence that Yutzy was on the tier or in any way involved with the events complained of.

Plaintiff stated in his interview with Mills that when he was escorted to cell 2-D-2, as he backed up to the slot so that the cuffs could be removed, Officer Mallow sprayed mace through the slot.   *Id.*, Ex. 7, p. 10.   He stated that the officers  then released the tether and let him go and that Mallow sprayed a second burst of spray into the cell and slammed the slot closed while

---

[4] The two IIU investigations were ultimately combined as it appears it was an error to have opened the second one.

Plaintiff was still handcuffed.  He claimed they left him there for maybe a minute before they released him.  Plaintiff claimed that when he was removed from the cell he fell to the tier.  He states that he was escorted to the C/D holding cell where he was placed on a bench.  He heard a female ask if he was okay.  He told her he was not because he had been punched and kicked but reported that the unidentified person did nothing for him.  Plaintiff advised Mills that he was then taken back to the D-tier where he was placed in the shower and assaulted by officers.  *Id*. He stated that after the shower he was taken to cell 2-D-3 where he had no mattress and the water was turned off.[5]  He also stated he received a bag lunch with only bread.  He reported remaining in the cell for approximately 25 hours.  *Id*.

Plaintiff further reported that on an unspecified date Sawyers moved him from Cell 17 to Cell 20 which had feces on the floor.  He indicated his belief that this was a retaliatory move. *Id*., p. 12. Plaintiff was moved from cell 2-D-17 to 2-D-20 on August 16, 2013, for unspecified institutional reasons.  *Id*., Ex. 1, Ex. 2.  Defendants offer that 2-D-20 would have been cleaned prior to Plaintiff moving into the cell.  *Id*., Ex. 2.  Defendants further offer that Plaintiff was not moved in retaliation for any complaints he made.  *Id*., Ex. 7, p. 14

As a result of the altercation between Plaintiff and staff on July 18, 2013, he was served with a Notice of Inmate Rule Infraction, *Id*., Ex. 7, pp. 51-63.  Plaintiff was found guilty of violating Rule 101 (assault on an officer), Rule 116 (possess, misuse, tamper with, damage or destroy security equipment or property, detention equipment, etc.) and Rule 312 (interfere with or resist the performance of staff duties.)  *Id*.  Plaintiff requested Ms. Holwager, his psychologist,

---

[5] Metz advised Mills that Cell 2 would not have a mattress as it is a de-escalation cell.  *Id*., Ex. 7, p. 14.  He was unsure whether water is turned on or off in the cell.  *Id*.

as a witness at his adjustment proceedings.  Holwager testified that Plaintiff was manipulative and attempted to "split staff." *Id.*

Counsel offers that Plaintiff has an extensive mental health history.  *Id.*, Ex. 11, Ex. 13. Relevant to the instant complaint, Plaintiff complained to psychology staff on June 10, 2013, that he was fearful that there was abuse of mental health inmates by general population inmates and staff.  *Id.*, Ex. 11, p. 49-50.  Plaintiff complained of his reassignment to housing unit 2 from housing unit 1, where he felt safer.  Psychology staff noted that Plaintiff suffers from, among other things, Borderline Personality Disorder which they note creates a tendency in its sufferers to split staff and attempt to win favor from staff in order to manipulate them.  Individuals with Borderline Personality Disorder hope to use the staff member to retaliate against other staff whom the sufferer perceives as doing him harm.  It was noted that Plaintiff may benefit from treatment in the Special Needs Unit.  *Id.*

On July 18, 2013, at 1:46 p.m. Jennifer Bruno, LPN, evaluated Plaintiff, after the altercation with staff.  *Id.*, Ex. 13, pp.48-49.  Plaintiff reported shortness of breath and that his chest hurt.  Plaintiff's lungs were clear and his oxygen saturation was 97% on room air.  Plaintiff complained that his face hurt;  however, no injuries were noted.  A red area on Plaintiff's back was observed but no other injures noted.  *Id.*  Plaintiff's medications chart indicates he received prescribed medications daily throughout July, 2013.  *Id.*, Ex. 13. pp. 44-47.

On July 24, 2013, Plaintiff refused to leave his cell for a scheduled psychology appointment but was seen at his cell door.  *Id.*, Ex. 13, pp. 50-53.  Mental health staff notes reflect Plaintiff's tendency to split staff, including making accusations that may not be true.  *Id.*

Plaintiff refused treatment for a scheduled sick call on July 27, 2013. *Id*., Ex. 13, p. 54. Plaintiff was seen by medical staff, due to complaints of painful urination on July 31, 2013. *Id*., Ex. 13, pp. 56-57. Plaintiff denied scrotal swelling, frequency, burning or urgency, or penile discharge. *Id*.

Plaintiff was seen for a chronic care clinic visit on August 2, 2013. Physical examination was made and no distress noted. *Id*., Ex. 13, pp. 62-64. His chronic conditions, hypertension and reflux were noted as controlled, while his epilepsy was noted as uncontrolled. No injuries were observed. *Id*.

Plaintiff failed to appear for his appointment on August 6, 2013. He was seen for an individual psychological therapy session on August 16, 2013. *Id*., Ex, 13, pp. 77-79. Plaintiff reported he was upset that he had been moved to another cell. The notes reflect that Plaintiff was asked to consider whether he was moved because his behavior, ranting loudly, was upsetting to other mental health inmates on the tier. Notes further reflect the psychological staff's opinion that Plaintiff suffers from a distorted view of the world, trusts almost no one, and is suspicious of any officer near him. *Id*. Ex. 13, p. 82. Plaintiff reported having auditory hallucinations on August 23, 2013. *Id*.

Plaintiff's records demonstrate that he has filed one grievance with the Inmate Grievance Office (IGO) since October, 2009. The grievance was an appeal from findings of guilt entered during a disciplinary hearing as to charges arising from this incident. *Id*., Ex. 14. The grievance was dismissed on December 2, 2013, after Plaintiff failed to respond to a letter from the IGO directing he provide copies of the disciplinary paperwork as required under Maryland regulations. *Id*.

Standard of Review

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require Defendant to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the Complaint in light of a motion to dismiss pursuant to Fed. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the Complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513

(2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the Complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. Thus, a Complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id*. 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.    Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very

11

terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.    Exhaustion

The court must first examine Defendants' assertion that Plaintiff's case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision

plainly extends to Plaintiff's allegations.  His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense.  *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase*, 286 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners.  If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction.  If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director

of the Inmate Grievance Office ("IGO").  *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210;

Md. Regs. Code title 12 § 07.01.03.

Administrative remedies must, however, be available to the prisoner and this court is

"obligated to ensure that any defects in administrative exhaustion were not procured from the

action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th

Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner,
> through no fault of his own, was prevented from availing himself of it.  *See*
> *Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v.*
> *Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006).  Conversely, a prisoner does not
> exhaust all available remedies simply by failing to follow the required steps so
> that remedies that once were available to him no longer are.  *See Woodford v.*
> *Ngo*, 548 U.S. 81, 89 (2006).  Rather, to be entitled to bring suit in federal court, a
> prisoner must have utilized all available remedies "in accordance with the
> applicable procedural rules," so that prison officials have been given an
> opportunity to address the claims administratively.  *Id.* at 87.  Having done that, a
> prisoner has exhausted his available remedies, even if prison employees do not
> respond.  *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Scott Oakley, Executive Director of the Inmate Grievance Office, avers that while

Plaintiff filed a complaint with the IGO regarding the disciplinary proceedings arising out of the

incident, he failed to complete same and failed otherwise to exhaust administrative remedies as

to his other complaints.  ECF No. 20, Ex. 14.  Plaintiff claims that he was thwarted from

instituting or completing the ARP process because correctional officers assigned to his tier

destroyed his ARPs and/or refused to accept them for filing.  Further, he indicates that his mail

was tampered with and that despite his efforts to comply with the IGO regarding

supplementation of his appeal, the filing was not received by the IGO.  ECF No. 30.  The court

cannot say on the record before it that Plaintiff did not exhaust "available" administrative remedies. As such, the court will consider the merits of Plaintiff's claims.

B.      Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).  The absence of significant injury alone is not dispositive of a claim of excessive force.  *See Wilkens v. Gaddy*, 556 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm.  *Wilkens,* 556 U.S. at 37.

Defendants deny that Plaintiff was assaulted as alleged in the complaint.  Defendants explain that after escorting Plaintiff to his new housing assignment, Plaintiff opened the door slot and grabbed Metz's keys, prompting Mallow to apply one burst of pepper spray into the cell. Plaintiff then complied with requests to be handcuffed and he was escorted without further incident to a holding cell, evaluated by medical staff, and a decontamination shower provided. The video evidence supports Defendants' version of events and contradicts the description of events offered by Plaintiff and other inmates.

16

While it is unclear from the video what prompted the struggle between Plaintiff and Defendants through the door slot, what is abundantly clear from the video is that Plaintiff was not locked in his cell for any period of time to suffer the effects of the pepper spray as he alleges in his compliant and affidavit.   More importantly the video also flatly refutes Plaintiff's averments that he was assaulted when he was removed from the cell.  No assault took place as he was removed from his cell and escorted off the tier.  The affidavits of Plaintiff and other inmates on the tier are flatly contradicted by the video.

The need for application of force as stated by Defendants was occasioned by Plaintiff's grabbing the keys of staff and struggling to keep the security slot open.  Defendants acted to keep control of the security keys and maintain security and order.  Ultimately, one burst of pepper spray was used to gain Plaintiff's compliance with orders to release the keys.  Thereafter, the officers were able to restrain Plaintiff and escort him to medical for treatment.

The reports generated by the medical department, that Plaintiff was complaining of pain in his chest, showed the effects of pepper spray, and had redness on his back, are entirely consistent with Defendants' version of events rather than Plaintiff's allegations that he was stomped, kicked, and assaulted by numerous corrections officers.   The record evidence demonstrates that the responding officers used only that force which was necessary to gain control over Plaintiff.   The IIU investigation and the Hearing Officer at the adjustment proceeding arising from Plaintiff's assaultive conduct found Plaintiff's allegation that Defendants spontaneously assaulted him not credible.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor.

17

Plaintiff has failed to submit any credible evidence to support his claim, or to put the material fact of this case--the use of force against Plaintiff--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). While the court may not determine credibility between the parties, *Gray v. Spillman*, 925 F.2d at 95, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here Defendants were responding to Plaintiff's spontaneous assault upon Metz and efforts to secure Metz's keys; the force used by Defendants to gain control of Plaintiff was tempered; Plaintiff's objective injuries were minor and entirely consistent with Defendants' version of events; and the Defendants were required to respond in order to protect their fellow officer and restore order and security to the institution. There is simply no evidence that any of the named Defendants were acting maliciously or sadistically to cause harm to Plaintiff. In light of the foregoing, Defendants are entitled to summary judgment.

C.     Conditions

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).

"These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298.  In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002).  Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury.  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).  Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

19

Defendants' conduct is not actionable unless, "in light of preexisting law the unlawfulness of those action is apparent." *Iko*, 535 F. 3d at 238 citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "We do not require of such officials the legal knowledge culled by the collective hindsight of skilled lawyers and learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Johnson v. Caudill*, 475 F. 3d 645, 650 (4th Cir. 2007).

Plaintiff alleges that he was placed in a dirty cell on July 18, 2013, with no mattress, or running water, without prescribed medication, and received limited bag lunches for 25 hours. He also claims that he was placed in a dirty cell on August 16, 2013. In the instant case there is no evidence that Plaintiff's cell was dirty. Defendants agree that the cell Plaintiff was placed in on July 18, 2013 was without a mattress and may have had the water supply turned off, as the cell was a de-escalation cell in which Plaintiff was placed due to his disruptive conduct on the tier. Defendants indicate that it is DOC policy that cells be cleaned by inmate staff prior to a new inmate being placed in the cell and that he received his medication. Plaintiff agrees that the cell was mopped, however, he claims that certain protocols regarding cleaning bodily fluids were not followed.[6]

Even assuming the cell was filthy on either occasion when Plaintiff was placed in the cell, the record evidence demonstrates that Plaintiff remained in the first cell one day. There is no information how long Plaintiff was housed in the cell in August or what, if any, efforts he made to access cleaning materials for the cell. The conditions as described by Plaintiff were not so severe that Defendants could be charged with "fair warning that their conduct was

---

[6] Plaintiff complains he was placed in an unhygienic cell on two different occasions: the de-escalation cell on July 18, 2013 for 25 hours, and an unspecified cell on August 16, 2013 for an unspecified period of time. Plaintiff conflates the two incidents in his filings with the court.

unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F. 3d 2929, 313 (4th Cir. 2006).

Defendants deny any knowledge that the cell was dirty as alleged by Plaintiff. They indicate, and Plaintiff concedes, that the cell was at the very least mopped with bleach before he was assigned to it. Further, Defendants indicate their belief that the cell was adequately cleaned, in compliance with DOC policy, prior to Plaintiff being placed in the cell. There is no evidence, other than Plaintiff's bald allegations, that Defendants subjectively intended to place Plaintiff into an unhygienic cell. Further, even assuming the cell was dirty, Plaintiff has nonetheless failed demonstrate any injury resulting in his being held in a dirty cell for 25 hours on July 18, 2013, or being placed in a dirty cell on August 16, 2013. The discomforts experienced by Plaintiff in the de-escalation cell were restrictive and harsh, but did not impose cruel and unusual punishment on him. This conclusion is supported by the absence of proof of significant, serious physical or psychological injury resulting from Plaintiff's temporary stay in the two cells.

D.      Property and Mail Claims

Plaintiff's claim that his property, including legal materials, were destroyed is also unavailing. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[7] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[8] Even if

---

[7] Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[8] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient

Plaintiff's property were improperly destroyed, such a claim does not rise to a constitutional violation.

To the extent, Plaintiff's allegation is construed as denial of access to the courts, the claim similarly fails.  Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis,* 518 U.S. at 355.  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  *Lewis*, 518 U.S. at 349.  Although, Plaintiff alleges legal materials were missing, he has failed to demonstrate an actual injury from the loss of those materials.

---

due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing Plaintiff's due process claim.

Prisoner claims regarding legal mail are typically analyzed as access to court claims.  To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. Plaintiff has advised of no actual injury or specific harm which he suffered as a result of the mishandling of his outgoing legal mail.  Likewise, to state a claim based on delay or non-delivery of legal mail, a prisoner must allege adverse consequence as basis for allegation that delay or non-delivery deprived him of meaningful access to courts.  *See Lewis*, 518 U.S. at 349*; see also Morgan v. Montanye*, 516 F.2d 1367 (2d Cir. 1975) (single interference did not violate Sixth Amendment).  Here, Plaintiff has failed to demonstrate actual injury as a result of any irregularity with the processing of his mail.

In regard to Plaintiff's claim that incoming legal mail was improperly handled, his claim also fails.  Isolated instances of mishandling of inmate mail do not constitute valid constitutional claims.  *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (isolated incident of mishandling does not show actionable pattern or practice).  Occasional incidents of delay or non-delivery of mail do not rise to a constitutional level.  *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).  The only evidence Plaintiff offers of injury are conclusory statements that the conduct of correctional staff violated his constitutional rights. Without greater specificity, Plaintiff's claims fail.

E.      ARP process

To the extent Plaintiff alleges there were problems with the processing of his administrative remedy requests, his claim fails.  While the long standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see*

*Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the issue is less clear.  The PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner.  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further clarification regarding exhaustion as a pleading requirement was announced by the United States Court of Appeals for the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id*. at 681.  To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense. *Id*. at 682.  Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause.  Assuming, *arguendo*, that Defendants did not satisfactorily process, investigate or respond to Plaintiff's remedy requests, Plaintiff has not demonstrated any injury as a result of the alleged failure to sign off or process his ARPs.

F.      Retaliation

Plaintiff claims that Defendants assaulted him, transferred him to a dirty cell, and mishandled his property and mail, all in retaliation for his having filed complaints against them. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act

was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d at 75. "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). Plaintiff offers nothing in support of his claim other than self-serving conclusory averments. There is nothing in the record to suggest that Defendants acted in the manner alleged. Additionally, the evidence before the court refutes Plaintiff's allegation of retaliation. The video evidence contradicts Plaintiff's claim that he was subjected to excessive force. Plaintiff's allegations regarding the assault by staff are flatly contradicted by the video evidence of his removal from the cell. The record evidence demonstrates that Plaintiff was transferred to the de-escalation cell due to his disruptive behavior on the tier. Plaintiff received a full and fair hearing as to the disciplinary charge lodged against him for interfering with staff. Plaintiff has a documented history of fabricating stories regarding staff in order to manipulate staff and other inmates. Additionally, Defendants aver that they did not tamper with Plaintiff's property, mail, or ARPs as alleged. "In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3de 1310, 1317 (4th Cir. 1996). Plaintiff cannot prevail on this claim.

Conclusion

For the reasons stated, Summary judgment is granted in favor of Defendants.[9]  A separate Order shall be entered in accordance with this Memorandum Opinion.

Date:   September 2, 2014                               /s/
                                                    DEBORAH K. CHASANOW
                                                    United States District Judge

---

[9] Having found no constitutional violation, the court need not address Defendants' claim of qualified immunity.